1
2
3
4
5
6
7

8            # UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11   | FREDERICK BEAGLE, et al., | Case No.  1:14-cv-00430- LJO-SAB |
12   | Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND |
13   | v. | DENYING IN PART DEFENDANTS BEARD, BRAZELTON, BROWN, CATE, HUBBARD, |
14   | ARNOLD SCHWARZENEGGER, et al., | HYSEN, ROTHCHILD, AND SCHWARZENEGGAR'S MOTION TO DISMISS |
15   | Defendants. | AND GRANTING DEFENDANTS IGBINOSA AND WINSLOW'S MOTION TO DISMISS |
16   | | (ECF Nos. 25-26, 27-28, 51, 54, 55, 56, 58) |
17   | | OBJECTIONS DUE WITHIN FOURTEEN DAYS |
18

19        Plaintiffs filed this action on February 5, 2014.  Currently before the Court are two

20   motions to dismiss, filed May 5, 2014.

21                          **I.**

22                  **PROCEDURAL HISTORY**

23        Plaintiffs Frederick Beagle, Don Belardes, Floyd Boyd, Richard Burke, Joseph

24   Bustamonte, Charles Carter, Otha Clark, Donald Dibble, Jerome Felder, Candelario Garza,

25   Jeremy Hollis, Scott Imuta, Infinity, George Johnson, Bruce Koklich, Grady Montgomery, Peter

26   Romero, Josh Thomas, Aaron Tillis, Rene Villanueva, Bertrum Westbrook, and Wayne Woods

27   ("Plaintiffs") filed a complaint in this action against Defendants Arnold Schwarzenegger,

28   Edmund G. Brown , Jeffrey A. Beard, Paul D. Brazelton, Matthew Cate, James D. Hartley, Susan

L. Hubbard, Deborah Hysen, Dr. Felix Igbinosa, Chris Meyer, Tanya Rothchild, Dr. Dwight Winslow, and James A. Yates alleging reckless exposure to dangerous conditions and deliberate indifference to serious medical needs in violation of the Eighth Amendment and negligence under California law in the Sacramento Division of the Eastern District of California on February 6, 2104.  (ECF No. 2.)  On March 26, 2014, this action was transferred to the Fresno Division of the Eastern District of California.  (ECF No. 11.)  On March 27, 2014 an order issued relating this action to <u>Jackson et al. v. State of California, et al.</u>, 1:13-cv-01055-LJO-SAB, a class action raising similar claims, and <u>Smith v. Schwarzenegger</u>, 1:14-cv-00430-LJO-SAB.  (ECF No. 14.)

On May 5, 2014, Defendants Beard, Brazelton, Brown, Cate, Hubbard, Hysen, Rothchild, and Schwarzenegger filed a motion to dismiss and request for judicial notice.  (ECF Nos. 25, 26, 28.)  On this same date, Defendants Igbinosa and Winslow filed a motion to dismiss and a notice of joinder in the motion to dismiss filed by the co-defendants.  (ECF Nos. 27, 29.)

On May 9, 2014, the Court issued an order to show cause why this action should not be consolidated with the related cases.  (ECF No. 34.)  On May 20, 2014, Plaintiffs filed a notice of voluntary dismissal of Defendant Kelso.  (ECF No. 36.)

On May 21, 2014, responses to the order to show cause were filed.  (ECF No. 37, 39.)  On May 22, Defendant Kelso was dismissed without prejudice and an additional response to the order to show cause was filed by Defendants Kelso and Winslow.  (ECF Nos. 40, 42.)  On May 29, 2014, Plaintiffs filed a notice of related case and Defendants Hartley and Yates filed a notice of joinder in Defendants' motion to dismiss.  (ECF Nos. 46, 47.)  On May 30, 2014, an order issued relating this action to <u>Abukar et al. v. Schwarzenegger, et al.</u>, 1:14-cv-00816-SAB.  <u>Abukar et al. v. Schwarzenegger, et al.</u>, 1:14-cv-00816-SAB at ECF No. 11.  On June 4, 2014, Defendants filed a supplement to the motion to dismiss.  (ECF No. 51.)

On June 4, 2014, Plaintiffs filed oppositions to the motions to dismiss.  (ECF Nos. 54, 55.)  On June 11, 2014, Defendants Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Hysen, Meyer, Rothchild, Schwarzenegger, and Yates filed a reply and an amended reply, and Defendants Igbinosa and Winslow filed a reply and a notice of joinder in the co-defendants' reply.  (ECF Nos. 56, 48, 59.)  On June 12, 2014, Defendants Igbinosa and Winslow filed a notice of joinder in

1    the co-defendants' amended reply.  (ECF No. 61.)

2        The Court heard oral arguments on June 18, 2014.  (ECF No. 63.)  Counsel Benjamin

3    Pavone appeared telephonically and counsel Gregg Zucker and David Elliot appeared for

4    Plaintiffs; counsel Michelle Angus appeared for Defendants Schwarzenegger, Beard, Brazelton,

5    Cate, Hartley, Hubbard, Hysen, Rothchild, Meyer, Yates, and Brown; and counsel Susan

6    Coleman appeared for Defendants Igbinosa and Winslow.  Id.  Having considered the moving,

7    opposition and reply papers, the declarations and exhibits attached thereto, arguments presented

8    at the June 18, 2014 hearing, as well as the Court's file, the Court issues the following findings

9    and recommendation.

**II.**

**RELEVANT COMPLAINT ALLEGATIONS**

12       Plaintiffs contend that Coccidioidomycosis ("Valley Fever") is carried by organisms that

13   live in the soil in certain limited geographic areas.  (First Am. Compl. ¶ 5, ECF No. 2.)  Most

14   individuals who contract Valley Fever have no symptoms or mild to moderate flu-like symptoms.

15   (Id. at ¶ 6.)  However, in certain ethnic and racial groups, including African-Americans, Filipinos

16   and other Asians, Hispanics, and American Indians, as well as those who are immune-

17   compromised or immune-suppressed, the disease can rapidly progress to a disseminated form.

18   (Id.)  In the disseminated form the disease attacks multiple organs requiring the individual to need

19   life-long treatment and possibly causing brain damage or death.  (Id. at ¶ 7.)

20       Plaintiffs to this action are inmates or former inmates of the state correctional system that

21   contracted Valley Fever.  (Id. at ¶ 8.)  Plaintiffs contend that Defendants were aware of the danger

22   of contracting Valley Fever and failed to take action to protect them from the disease.  (Id. at ¶¶

23   9-12.)

24       Plaintiffs allege that Defendant Schwarzenegger was the Governor of California from

25   2003 through 2011 when the Valley Fever epidemic began and it sharply escalated during that

26   time period.  (Id. at ¶ 14.)  Defendant Schwarzenegger acknowledged that inmates were coming

27   down with Valley Fever but took no action to address the epidemic.  (Id.)  Defendant

28   Schwarzenegger had the authority to establish CDCR policies and practices and failed to adopt a

1   policy that would have prevented high risk inmates from being located at or remaining at hyper-

2   endemic prisons.   (Id. at ¶ 15.)   Defendant Schwarzenegger condoned the decision by his

3   subordinates to authorize major construction at or immediately adjacent to the hyper-endemic

4   prison at Pleasant Valley.  (Id. at ¶ 17.)

5        Defendant Brown, the current Governor of California, continued the state policies and

6   practices put in place by Defendant Schwarzenegger.  (Id. at ¶ 19.)

7        Defendant Beard is the current Secretary of the California Department of Corrections and

8   Rehabilitation ("CDCR").   (Id. at ¶ 20.)   Defendant Beard is responsible for the policies and

9   practices of the CDCR as well as the day to day operational decisions.  (Id.)  Defendant Beard

10   allowed the policies set in place by his predecessor to continue.  (Id.)

11        Defendant Cate was the Secretary of CDCR from 2008 through 2012.  (Id. at ¶ 21.)

12   Defendant Cate created and continued policies that allowed transfer of inmates and failed to

13   protect high risk prisoner groups.  (Id.)

14        Defendant Hubbard is the former Director of CDCR's Division of Adult Operations and

15   was personally involved in the decision to adopt a policy that continued to allow Plaintiffs to be

16   housed in hyper-endemic prisons.  (Id. at ¶ 22.)   The policy acknowledged the health risk to

17   medically compromised inmate groups but omitted exclusion of inmates at risk due to ethnicity or

18   race. (Id.)

19        Defendant Rothchild is the former Chief of CDCR's Classification Services Unit

20   ("CSU").   (Id. at ¶ 23.)   The CSU is responsible for setting policies to assign or prevent

21   assignment of inmates to prisons and making the ministerial decisions to assign each individual

22   inmate to a specific prison.  (Id.)  Defendant Rothchild created and continued policies authorizing

23   transfer of at risk inmates to hyper-endemic prisons.  (Id.)

24        Defendant Hysen is the Chief Deputy Secretary of the CDCR Executive Office of Facility

25   Planning, Construction and Management.  (Id. at ¶ 24.)  Defendant Hysen did not implement any

26   environmental mitigation measures that were identified to reduce the risk of infection to

27   Plaintiffs.  (Id.)

28        Defendant Meyer is Senior Chief of CDCR Executive Office of Facility Planning,

4

1   Construction and Management.  (Id. at ¶ 25.)  Defendant Meyer did not implement any

2   environmental mitigation measures at the hyper-endemic prisons.  (Id.)

3        Defendant Winslow is the former Statewide Medical Director for CDCR.  (Id. at ¶ 27.)  In

4   June 2007, Defendant Winslow authored a memo disclosing that CDCR was aware of the risk of

5   infection at hyper-endemic prisons and that the risk was greater for certain ethnic groups.  (Id.)

6   The memorandum included recommendations to reduce the infection rate inside the prison.  (Id.)

7   In November 2007, Defendant Winslow made policy recommendations that did not include

8   exclusion of inmates based upon their racial or ethnic group.  (Id.)  Defendant Winslow

9   personally participated in the adoption of policies that allowed high risk inmates to continue to be

10  transferred to institutions that were experiencing epidemic levels of Valley Fever.  (Id. at ¶ 28.)

11       Defendant Brazelton was Warden of Pleasant Valley State Prison ("PVSP").  (Id. at ¶ 29.)

12  Defendant Brazelton failed to take any action to correct the unsafe conditions at the prison, to

13  prevent Plaintiffs from being housed there, or to protect inmates from contracting Valley Fever.

14  (Id.)

15       Defendant Yates was the Warden of PVSP from 2005 through 2012.  (Id. at ¶ 30.)

16  Defendant Yates was aware of the Valley Fever epidemic yet failed to adopt policies or

17  procedures to avoid the transfer of high risk inmates into the prison or protect those high-risk

18  inmates housed at PVSP.  (Id.)

19       Defendant Hartley is the current Warden at Avenal State Prison ("ASP").  (Id. at ¶ 31.)

20  Defendant Hartley made an independent decision to accept certain Plaintiffs at ASP.  (Id.)

21  Defendant Hartley is responsible for the operations of ASP and continued the policy to accept at-

22  risk prisoners and failed to implement basic remedial measures to make the facility safe.  (Id.)

23       Defendant Igbinosa is the Medical Director at PVSP.  (Id. at ¶ 32.)  Defendant Igbinosa

24  was aware of the epidemic incidence rates of disease and medical risks to Plaintiffs and failed to

25  take any action to address the epidemic or reduce inmate exposure to the disease.  (Id.)

26  Defendant Igbinosa did not implement a prison-level policy of screening inmates for risk of

27  contracting Valley Fever.  (Id.)

28       Plaintiffs contend that Defendants have had notice of the risk of Valley Fever for over

1   fifty years based upon publications in the American Journal of Public Health.  (Id. at ¶¶ 53-55.)

2   Between 1987 and 1997, the CDCR built eight prisons within the endemic and hyper-endemic

3   regions of the Central Valley.  (Id. at ¶ 54.)  Plaintiffs contend that PVSP was extraordinarily

4   dangerous in regards to exposing inmates to Valley Fever because the soil surrounding and under

5   PVSP is densely contaminated with Coccidioides fungus.  (Id. at ¶¶ 55, 57.)  The prison grounds

6   contain broad expanses of bare dirt without any vegetation which allows the spores to circulate in

7   the air and into the buildings.  (Id. at ¶ 58.)

8       In November 2004, Renee Kanan, Deputy Director of Health Care Services, wrote a

9   memo to all health care managers, staff and CDCR officials regarding Valley Fever and its origin

10  in soil.  (Id. at ¶ 59.)  The memo stated that Central Valley prisons are located within areas that

11  host the fungus in the soil; Valley Fever can be lethal for people exposed to the fungus; winds and

12  construction activity may cause the organism to be blown into the air where it could be inhaled;

13  this may cause a percentage of individuals to catch pneumonia or disseminated disease; the risk of

14  disseminated disease is highest in American Indians, Asians, Blacks, and immuno-compromised

15  individuals.  (Id. at ¶ 60.)  Plaintiffs contend this memo was and is still widely distributed within

16  CDCR.  (Id. at ¶ 61.)  A compromised immune system can be caused by chronic diseases such as

17  diabetes, HIV, lung disease, organ transplant, or taking TNF inhibitors as medication for arthritis.

18  (Id. at ¶ 88.)  Individuals over the age of fifty five have also been found to be at increased risk of

19  developing severe disseminated disease.  (Id.)

20      In 2005, PVSP began to experience an epidemic of Valley Fever.  (Id. at ¶ 62.)  The

21  infection rates at PVSP were as much as 1,000 times the rate seen in the local population.  (Id. at

22  ¶ 63.)  An October 27, 2006 memo described the infection rates within the CDCR and the rates at

23  PVSP had increased by more than 445% between 2001 and 2005, and by over 2,500% by 2006.

24  (Id. at ¶¶ 64, 65.)

25      In 2005, a prisoner rights group sent an informational briefing to Defendant

26  Schwarzenegger describing the threat of Valley Fever and the threat to African-Americans,

27  Filipinos, elderly inmates, and the immune-compromised.  (Id. at ¶ 101.)  In 2006, the prison

28  system accounted for 30% of all Valley Fever cases reported to the State Department of Health.

1   (Id. at ¶ 66.)

2          After the 2005 outbreak at PVSP, California Corrections Health Care Services

3   ("CCHCS") requested and received assistance from the California Department of Public Health

4   ("CDPH") in assessing and controlling cocci at PVSP.  (Id. at ¶ 68.)  CDPH reported that the rate

5   of Valley Fever cases at PVSP was 38 times the rate of residents of Coalinga and 600 times the

6   rate in Fresno County.  (Id. at ¶ 69.)  The increased rate at CDPH was reported as associated with

7   increased outdoor time, pre-existing health conditions, and African-American race.  (Id.)

8          An August 2006 internal memorandum confirmed that Defendants were aware that

9   inmates were being housed in hyper-endemic locations.  (Id. at ¶ 70.)  During 2006 through 2010

10  the rates of Valley Fever at PVSP, ASP, Wasco State Prison, and North Kern State Prison were

11  significantly higher than rates in the counties in which they are located.  (Id. at ¶ 71.)  Of the

12  twenty-seven inmates who died of Valley Fever between 2006 and 2010 sixty eight percent of

13  them were African-American.  (Id. at ¶ 73.)  The rapid and continued increase in Valley Fever at

14  PVSP in 2005/2006 was attributed to new construction next to the prison.  (Id. at ¶ 74.)

15  Defendants increased this risk by deciding to construct a new mental hospital facility immediately

16  adjacent to the prison.  (Id. at ¶ 75.)

17         Following the start of construction, the number of Valley Fever cases increased.  (Id. at ¶

18  77.)  By mid-August 2006, PVSP had recognized 300 new cases of Valley Fever.  (Id.)  The

19  excavation and construction adjacent to the prison placed an inordinate amount of Coccidioides

20  spores into the air in and around the prison.  (Id. at ¶ 77.)

21         In 2006 and 2007, a Fresno County Grand Jury evaluated inmate health status at PVSP

22  and made a series of recommendations.  (Id. at ¶ 94.)  The report stated that inmates and staff

23  continue to be at great risk from Valley Fever, and that African-American, Hispanic, Filipino, and

24  other Asian inmates were at a far greater risk than other ethnicities.  (Id. at ¶¶ 96, 99.)  These

25  reports were issued to Defendants Beard, Brazelton, Yates, and Cate and were forwarded to other

26  CDCR officials.  (Id. at ¶ 97.)

27         In January 2007, a study by the California Department of Public Health, Center for

28  Infectious Disease was published.  (Id. at ¶ 108.)  The study found that the number of cases of

1   Valley Fever reported at PVSP in 2005 was three times that of the rest of Fresno County.  (Id. at ¶

2   109.)  The study reported that individuals with a suppressed immune system, African-Americans,

3   Hispanics, Filipinos, and other Asians are at a higher risk of developing disseminated disease.

4   (Id.)  The study, which was widely circulated within CDCR, recommended relocating those

5   inmates at highest risk to areas not in the hyper-endemic area and to take steps to minimize

6   exposure to Valley Fever, including ventilation, respiratory protection and dust suppression and

7   soil control.  (Id. at ¶ 110.)

8        In a January 11, 2007, memo to the CDCR informed the Department of Public Health

9   ("DPH") that studies have suggested that the risk of complications is increased for individuals of

10  African or Filipino descent and heavily immuno-suppressed individuals.  (Id. at ¶ 91.)  The DPH

11  concluded that exclusion of these high-risk inmates was the most effective method to decrease the

12  risk of Valley Fever infections.  (Id.)

13       In June 2007, CCHCS issued recommendations, including landscaping with ground cover

14  and concrete, diverting and relocating inmates at high risk, and not expanding prison beds in the

15  hyper-endemic areas, especially at PVSP.  (Id. at ¶ 80.)  In August 2007, Prison Legal News ran

16  an article detailing the source, exposure, prognosis, and risk factors for Valley Fever in the

17  subject prisons.  (Id. at ¶ 113.)

18       In September 2007, Defendant Schwarzenegger proposed that California construct new

19  dormitories at PVSP to expand the number of prisoners housed there.  (Id. at ¶ 103.)  When

20  questioned during a press conference about the proposed expansion exposing more prisoners to

21  Valley Fever, Defendant Schwarzenegger indicated he was not concerned and that they would go

22  ahead and build.  (Id. at ¶ 104.)

23       In November 2007, prison officials issued a formal exclusion policy for inmates with

24  certain medical conditions, but did not include inmates at high risk due to their ethnicity or race.

25  (Id. at ¶ 80.)  During 2007, CDCR Facilities Department officials, including Defendant Hysen,

26  stated that they were preparing measures to reduce the risk to inmates of contracting Valley Fever

27  at PVSP.  (Id. at ¶ 115.)  The plan, which included extensive measures to control inmate's

28  exposure to contaminated soil and ventilation systems inside the buildings was never

8

implemented.  (Id. at ¶¶ 116, 117.)

During 2007, Defendant Yates was quoted in an article by the New York Times as stating the inmates and staff at PVSP contracted Valley Fever from breathing the spores in the air as they walk around.  (Id. at ¶ 119.)  From 2007 through 2010, the rate of Valley Fever at PVSP was six times higher than the rate of infection at the adjacent state mental health facility.  (Id. at ¶ 81.)

After a federal health agency project was terminated, in December 2009 officials from the Centers for Disease Control and National Institute for Occupational Safety and Health wrote letters to the CDCR stating that African-American, Asian or Filipino, or immuno-compromised individuals were at a greater risk of developing disseminated infection.  (Id. at ¶ 82.)

In 2011, CDCR sprayed a temporary sealant on some soils at PVSP.  (Id. at ¶ 179.) During an October 2011 press conference, Defendant Schwarzenegger announced that the State's policy and practice of transferring prisoners to PVSP would continue unabated despite the risk of Valley Fever.  (Id. at ¶ 83.)

In April 2012, the CCHCS released a report finding that CDCR had done nothing between 2006 and 2010 that had any effect on cocci incidence rates at PVSP and ASP.  (Id. at ¶ 124.)  The report indicated that Valley Fever incidence rates were drastically elevated and that African-Americans in particular were at an increased rate of contracting Valley Fever in its disseminated form.  (Id. at ¶125.)  The report found that PVSP had extensive areas of un-stabilized soil on its grounds.  (Id. at ¶126.)  Over 80 CDCR facility staff members have contracted Valley Fever and there has been at least one correctional officer who died from the disease.  (Id. at ¶ 128.)

In November 2012, the court-appointed receiver managing the prison health care system issued a recommendation.  (Id. at ¶ 188.)  The document recommended ceasing to transfer African-Americans, persons with diabetes, and those with no HIV results to PVSP and ASP.  (Id.)

In March 2013, CDCR installed dust control devices, such as air filters and door sweeps, in some prison facilities.  (Id. at ¶ 180.)  In April 2013, the Receiver's staff experts found that African-Americans were at a 90% higher risk for disseminated cocci disease than white inmates, and other race categories were at 100% increased risk, and inmates over 55 years of age had a 60% increased risk.  (Id. at ¶ 189.)

CDCR publishes an orientation manual for all medical personal that discusses the Coccidioiditis epidemic in detail and notes that African-Americans, Filipinos, and those with compromised immune systems or chronic diseases are at an increased risk of contracting Valley Fever.  (Id. at ¶ 105.)   The orientation manual is authorized and promulgated by Defendant Winslow.  (Id. at ¶ 106.)

Plaintiffs allege that the exposure to dangerous conditions subjects them to cruel and unusual punishment and exhibited deliberate indifference in violation of the Eighth Amendment and is negligence under California law.  (Id. at ¶¶ 359-399.)  Plaintiffs seek monetary damages. (Id. at 75-76.[1])

**A.      Plaintiff Fredrick Beagle**

Plaintiff Beagle is a forty-one year old Caucasian male.  (Id. at ¶ 201.)  Prior to being housed at ASP, Plaintiff Beagle had elevated liver enzymes suggesting a compromised liver, blood clots in his legs, lower back pain, gout, and chronic pain from skin grafts.  (Id. at ¶ 203.) Plaintiff Beagle was diagnosed with Valley Fever in March 2013.  (Id. at ¶ 204.)  Plaintiff Beagle has aching joints, back pain, severe headaches, night sweats, inflamed rashes on his head and legs, chest pain, and fatigue.  (Id.)

**B.      Plaintiff Don Belardes**

Plaintiff Belardes is a forty year old of Native American and Spanish descent.  (Id. at ¶ 208.)  Plaintiff Belardes was transferred to PVSP in May of 2010.  (Id. at ¶ 209.)  Plaintiff Belardes was diagnosed with Valley Fever in October of 2011.  (Id. at ¶ 211.)  Plaintiff Belardes has had bronchitis and pneumonia that are resistant to treatment and suffers from back spasms and pain.  (Id. at ¶ 212.)

**C.      Plaintiff Floyd Boyd**

Plaintiff Boyd is a forty-nine year old African-American.  (Id. at ¶ 217.)  Plaintiff Boyd was transferred to PVSP in 2012 and remained housed there until his release from prison.  (Id. at

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

¶ 218.)  Plaintiff was diagnosed with Valley Fever on September 11, 2013.  (<u>Id.</u> at ¶ 219.)
Plaintiff Boyd continues to experience coughing, night sweats, joint pain, headaches, fevers and
chill.  (<u>Id.</u> at ¶ 22.)

### D.   Plaintiff Richard Burke

Plaintiff Burke is a fifty-two year old Caucasian male who was transferred to PVSP on
January 2010.  (<u>Id.</u> at ¶¶ 225, 226.)  Plaintiff Burke was diagnosed with Valley Fever around
February 2012.  (<u>Id.</u> at ¶ 228.)  Plaintiff Burke suffers from lesions on his arms and legs, swelling
and skin rashes all over his body, shortness of breath, and aching joints.  (<u>Id.</u> at ¶ 229.)

### E.   Plaintiff Joseph Bustamonte

Plaintiff Bustamonte, a former inmate, is a thirty-year old Hispanic male who was
transferred to PVSP on December 9, 2010.  (<u>Id.</u> at ¶ 234, 235.)  Plaintiff Bustamonte was
diagnosed with Valley Fever about July 30, 2011.  (<u>Id.</u> at ¶ 235.)  Plaintiff Bustamonte does not
allege any current symptoms from Valley Fever.

### F.   Plaintiff Charles Carter

Plaintiff Carter is a forty-two year old African-American who was transferred to PVSP in
March 2011.  (<u>Id.</u> at ¶¶ 241, 242.  Plaintiff Carter was diagnosed with Valley Fever in June 2012.
(<u>Id.</u> at ¶ 243.)  Plaintiff Carter does not allege any current symptoms from Valley Fever.

### G.   Plaintiff Otha Clark

Plaintiff Clark is a twenty-seven year old African-American who was transferred to PVSP
in 2009.  (<u>Id.</u> at ¶¶ 247, 248.)  Prior to his transfer, Plaintiff Clark had asthma.  (<u>Id.</u> at ¶ 248.)
Plaintiff contracted Valley Fever around December 10, 2010, and was diagnosed in February
2011.  (<u>Id.</u> at ¶ 250.)  Plaintiff has been admitted to the hospital over twenty times in the last year
and suffers from persistent coughs, fevers and night sweats, and has trouble eating, drinking, and
struggles to maintain his weight.  (<u>Id.</u> at ¶¶ 251, 252.)

### H.   Plaintiff Donald Dibble

Plaintiff Dibble is a thirty-five year old male with chronic asthma.  (<u>Id.</u> at ¶ 255.)  Plaintiff
was incarcerated at ASP in August of 2012 when he was treated for Valley Fever.  (<u>Id.</u> at ¶ 256.)
Plaintiff Dibble does not allege any current symptoms from Valley Fever.

### I.     Plaintiff Jerome Felder

Plaintiff Felder is a thirty-six year old African-American who was transferred to PVSP in August of 2011.  (Id. at ¶ 261.)  Plaintiff was diagnosed with Valley Fever in January 2012.  (Id. at ¶ 262.)  Plaintiff Felder does not allege any current symptoms from Valley Fever.

### J.     Plaintiff Candelario Garza

Plaintiff Garza is a fifty-nine year old Hispanic male who was transferred to PVSP in June 2007.   (Id. at ¶¶ 264, 265.)   Prior to his transfer, Plaintiff Garza had Hepatitis C and a compromised immune system.  (Id. at ¶ 265.)  Plaintiff Garza was formally diagnosed with Valley Fever on December 14, 2010.  (Id. at ¶ 266.)  Plaintiff has developed pneumonia and Chronic Obstructive Pulmonary Disease, and blood clots in his legs and lungs.  (Id. at ¶ 267.)

### K.     Plaintiff Jerry Hollis

Plaintiff Hollis is a forty year old Caucasian male who was transferred to PVSP in December 2010.  (Id. at ¶¶ 274, 275.)  Plaintiff was treated for Valley Fever, but was not formally tested and has been told that he does not have Valley Fever.  (Id. at ¶ 277.)  Plaintiff has shortness of breath and recurrence of the symptoms which initiated his treatment for Valley Fever.  (Id. at ¶ 277.)

### L.     Plaintiff Scott Imuta

Plaintiff Imuta, a former inmate, is a forty-seven year old Japanese-American male who was housed at PVSP from 2005 through 2009.  (Id. at ¶¶ 280, 281.)  Plaintiff Imuta alleges he has had symptoms of Valley Fever since December 2010, but was not diagnosed until March 2012.  (Id. at ¶¶ 283, 284.)  Plaintiff Imuta's immune system is now compromised, he has contracted hepatitis and has constant staph infections.  (Id. at ¶ 286.)  Plaintiff Imuta coughs constantly, has very high blood pressure, and suffers from depression.  (Id. at ¶ 286.)

### M.     Plaintiff Infinity

Plaintiff Infinity is a sixty-six year old African-American male who was transferred to PVSP in May of 2011.  (Id. at ¶ 291.)  Plaintiff Infinity was diagnosed with Valley Fever in October of 2011.  (Id.)  The disseminated Valley Fever infection formed a mass on his left side that required surgery and the disseminated cocci has been detected in his spine.  (Id. at ¶ 292.)

Plaintiff does not allege any current symptoms from Valley Fever.

### N.    Plaintiff George Johnson

Plaintiff Johnson, a former inmate, is a thirty-one year old African-American who was housed at PVSP for a brief sentence.  (Id. at ¶¶ 296, 300.)  Plaintiff Johnson was diagnosed with Valley Fever on February 15, 2012.  (Id. at ¶ 297.)  Plaintiff Johnson has problems breathing, difficulty walking, aching bones and fatigue.  (Id. at ¶ 298.)

### O.    Plaintiff Bruce Koklich

Plaintiff Koklich is a fifty-four year old Caucasian male who was housed at PVSP from September 2008 through May 2009 during construction on the adjacent mental health facility.  (Id. at ¶¶ 302, 304.)  Plaintiff Koklich was diagnosed with Valley Fever on January 27, 2009.  (Id. at ¶ 303.)  Plaintiff Koklich suffers from pain in his lungs, back, spine, left hip and both hands.  (Id. at ¶ 304.)  Plaintiff also has skin lesions and rashes on his ankles, swelling in his legs and trouble breathing.  (Id. at ¶ 304.)

### P.    Plaintiff Grady Montgomery

Plaintiff Montgomery is a forty-nine year old African-American male who was transferred to PVSP on January 1, 2012.  (Id. at ¶ 309.)  Plaintiff Montgomery was diagnosed with Valley Fever in December 2012.  (Id. at ¶ 312.)  Plaintiff Montgomery has fluid on his lungs, pain in his body and joints, difficulty breathing, scaling skin, chronic itching and skin rashes.  (Id. at ¶ 314.)

### Q.    Plaintiff Peter Romero

Plaintiff Romero is a fifty-three year old Hispanic and Native American male who was housed at PVSP until September 3, 2010.  (Id. at ¶¶ 317, 318.)  Prior to his transfer to PVSP, Plaintiff Romero had a compromised immune system due to Hepatitis C.  (Id. at ¶ 319.)  Plaintiff was diagnosed with Valley Fever after he was hospitalized on September 30, 2011, and a subsequent test on June 23, 2011 confirmed the diagnosis.  (Id. at ¶ 320.)  Plaintiff Romero underwent two surgeries as a result of his Valley Fever.  (Id. at ¶ 321.)  One surgery left him with permanent nerve damage, back pain, and restricted mobility.  (Id.)

### R.    Plaintiff Josh Thomas

Plaintiff Thomas is a sixty year old African-American who had a weakened immune

system prior to being incarcerated.  (<u>Id.</u> at ¶ 325, 326.)  Plaintiff Thomas was housed at the California Substance Abuse Treatment Facility and State Prison at Corcoran until 2012.  (<u>Id.</u> at ¶ 327.)  Plaintiff Thomas was diagnosed with Valley Fever in January 2011.  (<u>Id.</u> at ¶ 328.)  Plaintiff Thomas does not allege any current symptoms from Valley Fever.

### S.   Plaintiff Aaron Tillis

Plaintiff Tillis is a thirty year old African-American who was transferred to PVSP in 2009.  (<u>Id.</u> at ¶¶ 333, 334.)  Plaintiff Tillis was diagnosed with Valley Fever on February 21, 2012.  (<u>Id.</u>at ¶ 335.)  Plaintiff Tillis suffers from generalized body aches, night sweats, skin rashes and lesions, chronic fevers and trouble breathing.  (<u>Id.</u> at ¶ 335.)

### T.   Plaintiff Rene Villanueva

Plaintiff Villanueva is a twenty-six year old Hispanic male who was transferred to PVSP in January 2011.  (<u>Id.</u> at ¶¶ 339, 340.)  Plaintiff Villanova was diagnosed with Valley Fever on September 22, 2011.  (<u>Id.</u> at ¶ 342.)  Plaintiff suffers from severe pain throughout his body, weight loss, labored breathing, chest and lung pain, excessive coughing, and rashes and swelling of his lower legs.  (<u>Id.</u> at ¶ 342.)

### U.   Plaintiff Bertrum Westbrook

Plaintiff Westbrook is a thirty-seven year old African-American who was transferred to PVSP in early 2009.  (<u>Id.</u> at ¶¶ 346, 347.)  Plaintiff Westbrook was diagnosed with Valley Fever in 2010.  (<u>Id.</u>)  Plaintiff has aching joints that limit his movement, fevers, chest pain, nausea, and back problems.  (<u>Id.</u> at ¶ 349.)

### V.   Plaintiff Wayne Woods

Plaintiff Woods is a fifty-eight year old African-American who was transferred to ASP on August 8, 2012.  (<u>Id.</u> at ¶¶ 353, 354.)  Plaintiff Woods was diagnosed with Valley Fever on October 30, 2012.  (<u>Id.</u> at ¶ 355.)  Plaintiff Woods has night sweats, chills, fever, rashes and fatigue.  (<u>Id.</u> at ¶ 355.)

### III.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Starr, 652 F.3d at 1216.

## IV.

## ANALYSIS

All defendants appearing move to dismiss this action under Rule 12(b)(6) on the grounds that the complaint 1) fails to allege any Defendant personally caused the alleged constitutional deprivations; 2) fails to state sufficient facts to demonstrate deliberate indifference on the part of any Defendant; 3) Plaintiffs Belardes, Carter, Clark, Felder, Garza, Hollis, Infinity, Koklich, Montgomery, Romero, Thomas, Tillis, Villanueva, Westbrook, and Woods claims for future medical care are not ripe; 4) the complaint includes misjoined parties and claims; 5) Plaintiffs failed to comply with the Government Tort Claim Act; and 6) the complaint violates Rule 8 of the Federal Rules of Civil Procedure.  (Defs. Rothchild, Hysen, Meyer, Beard, Schwarzenegger, Hubbard, Brazelton, and Brown's Mot. to Dismiss 2, ECF No. 25.)  Similarly, Defendants

1    Igbinosa and Winslow move to dismiss the complaint on the ground that the complaint fails to

2    show that they personally violated the constitution.   (Defs. Igbinosa and Winslow's Mot. to

3    Dismiss Pls.' Compl. 9-13, ECF No. 27.)

4          Plaintiffs oppose the motions arguing that the complaint is sufficiently detailed to survive

5    a motion to dismiss, Plaintiffs can bring a claim for future medical care, Defendants failure to

6    comply with Government Code Section 53501 excuses Plaintiffs from the requirement that they

7    submit claim forms to the Victim Compensation Board, the parties are properly joined in this

8    action, and the complaint satisfies Rule 8.   (Pls.' Opp. to Defense 12(b)(6) Mot. 13-32, ECF No.

9    54; Pls.' Brief in Opp. to Defs. Igbinosa and Winslow's Mot. to Dismiss 9-13, ECF No. 62.)

10         **A.    Personal Liability**

11         Defendants argue that Plaintiffs' complaint fails to state a claim as it does not allege that

12   Defendants personally violated the United States Constitution.   (ECF No. 25-1 at 12-15.)

13   Plaintiffs counter that the complaint contains sufficiently detailed facts to state a claim against the

14   defendants in this action.  (ECF No. 54 at 13-16.)

15         Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

16   other federal rights by persons acting under color of state law.   Nurre v. Whitehead, 580 F.3d

17   1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

18   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).   To state a claim, Plaintiffs must

19   demonstrate that each defendant personally participated in the deprivation of his rights.   Iqbal,

20   556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010);

21   Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

22         Under section 1983, liability may not be imposed on supervisory personnel for the actions

23   or omissions of their subordinates under the theory of respondeat superior.   Iqbal, 556 U.S. at

24   677; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.   "A

25   supervisor may be liable only if (1) he or she is personally involved in the constitutional

26   deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful

27   conduct and the constitutional violation."   Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir.

28   2013) (citations omitted).  Supervisors may be held liable where they "participated in or directed

16

1   the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880

2   F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-06; Corales v. Bennett, 567 F.3d

3   554, 570 (9th Cir. 2009).

4          During the June 18, 2014 hearing defendants argued that the present allegations are

5   sufficient to state a claim where they are plausible and under Iqbal the court may infer knowledge

6   from the facts pled in the complaint.  However, under Twombly and Iqbal "a complaint must

7   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

8   face." Iqbal, 556 U.S. at 678.  This requires factual content for the court to draw the reasonable

9   inference that the defendant is liable for the alleged misconduct.  Id.  A complaint stops short of

10  the line between probability and the possibility of relief where the facts pled are merely consistent

11  with a defendant's liability.  Id.  "[W]here the well-pleaded facts do not permit the court to infer

12  more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is

13  entitled to relief.  Id.  Further, while the court is to accept all "well pleaded factual allegations" in

14  the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic

15  recitations of the elements of a cause of action or legal conclusions couched as factual allegations,

16  Twombly, 550 U.S. at 555.  The conclusory allegations in the complaint are not entitled to the

17  presumption of truth.  Iqbal, 556 U.S. at 681.

18         Defendants also argued that the court should allow the complaint to go forward on what

19  the court deems conclusory allegations to allow discovery to determine if the defendants could be

20  liable for the conduct alleged.  However, when the allegations in the complaint do not state a

21  claim for relief the court is to address the deficiency to avoid the expenditure of time and money

22  by the parties and the court.  Twombly, 550 U.S. at 558.

23         1.      Defendant Brown

24         Plaintiffs appear to be blurring the line between official capacity and personal capacity

25  lawsuits and are attempting to bring claims against current officials based solely on their position

26  and the policies and procedures put in place by their predecessors.[2]  In an official capacity lawsuit

27  _____

28  [2] Plaintiffs are only seeking damages in this lawsuit.  Plaintiffs may not bring suit against Defendants in their official capacity.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and

17

it is appropriate to name the current official as a defendant in the action, Fed. R. Civ. P. 25(d), however to state a claim against the current official in their personal capacity requires allegations showing that the official was personally involved, or there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Crowley, 734 F.3d at 977.  Plaintiffs have failed to set forth allegations to show that Defendant Brown had knowledge of a risk to Plaintiffs and failed to act.  Plaintiffs' conclusory allegations that Defendant Brown knew of the risk and continued the state policies and practices put in place by Defendant Schwarzenegger is insufficient to show that Defendant Brown participated in any violation that caused injury to Plaintiffs in this action.  Defendants' motion to dismiss Defendant Brown should be granted.

> 2.    Defendants Beard and Brazelton

Plaintiffs contend that Defendants Beard and Brazelton had knowledge of the risk of Valley Fever due to the Grand Jury reports.  However, the complaint fails to allege when these reports were provided to Defendants Beard and Brazelton.  Additionally, the complaint does not identify the position at CDCR that these defendants held during the time period in which Plaintiffs contracted Valley Fever.  Therefore, there is no information contained in the complaint from which the Court can infer that Defendants Beard or Brazelton were liable for the policy to house high risk inmates in the hyper-endemic area.  Absent such factual allegations the complaint is insufficient to link Defendants Beard or Brazelton to the alleged violations.

Further, Plaintiffs complaint fails to contain allegations to state a plausible claim that Defendants Beard and Brazelton's actions after they were appointed as the Secretary of CDCR or Warden of PVSP contributed to the plaintiffs injuries.  Absent such factual allegations the complaint is insufficient to link Defendants Beard or Brazelton to the alleged violations.

Plaintiffs allege that Defendant Beard is the current Secretary of the CDCR, being appointed to the position in December 2012. (ECF No. 2 at ¶ 20.)  The  only  plaintiff  to  this action who would state a claim as being at a substantial risk of harm, as discussed below, and was

---

state officials acting in their official capacities."  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

diagnosed with Valley Fever after Defendant Beard was appointed as Secretary in December 2012 is Plaintiff Boyd.  Plaintiff Boyd was transferred to PVSP in 2012 and was formally diagnosed with Valley Fever in September 2013, however the complaint fails to allege when he developed symptoms.  The complaint fails to allege facts to show that Plaintiff Boyd was at a substantial risk of harm during the time period that Defendant  Beard was Secretary of the CDCR.  If Plaintiff Boyd had already contracted Valley Fever prior to Defendant Beard taking office, he would no longer be exposed to the risk and for this reason, Plaintiff Boyd fails to state a claim against Defendant Beard.

Similarly, Plaintiffs allege that Defendant Brazelton was the Warden of PVSP from summer 2012 to fall of 2013.  (Id. at ¶ 29.)  Plaintiffs to this action contracted Valley Fever between January 2009 and September 2013.  (Id. at ¶¶ 201-355.).  The only plaintiffs to this action who are within the high risk groups that were diagnosed after Defendant Brazelton became the Warden at PVSP were Plaintiffs Boyd, Montgomery, and Woods.  Plaintiff Woods was housed at ASP, not PVSP, and therefore he fails to state a claim against Defendant Brazelton.  Plaintiff Boyd fails to state a claim against Defendant Brazelton for the same reasons that his allegations fail to state a claim against Defendant Beard.  Finally, Plaintiff Montgomery became ill around August 2012, and the allegations in the complaint fail to show that Defendant Brazelton was Warden of PVSP prior to Plaintiff Montgomery becoming ill.  Plaintiff Montgomery fails to state a claim against Defendant Brazelton.

For these reasons, the complaint fails to state a claim against Defendants Beard and Brazelton and Defendants motion to dismiss Defendants Beard and Brazelton should be granted.

3.     Defendants Hubbard, Rothchild, Hysen, Meyer, and Hartley

Despite Plaintiffs' allegations that prison officials have known of the risk of Valley Fever for over 50 years, the fact that medical journals have published articles does not show that the risk was evident to Defendants in this action.  Based on the allegations in the complaint, it was not until 2004 that a memo was provided to officials within the prison system which mentioned that the risk of disseminated disease was highest in certain individuals.  (Id. at ¶ 60.)  In June 2007, the CCHCS issued recommendations to address the spread of Valley Fever in the prison system

and in November 2007 prison officials adopted their exclusion policy.  (Id. at ¶¶ 80, 81.)  While Plaintiffs set forth numerous allegations regarding information that was available after this time period, it is what Defendants knew at the time that they acted or that Plaintiffs were housed at ASP or PVSP and contracted Valley Fever that is relevant in making the analysis of whether the complaint states a claim.  Further, Plaintiffs must set forth sufficient factual allegations to show that each named defendant acted in a manner that would harm these individual plaintiffs.

While Plaintiffs allege that Defendants Hubbard, Rothchild, Hysen, Meyer, and Hartley had knowledge of the risks of Valley Fever to specific classes of inmates, the complaint fails to allege that they held an office during the time period at issue in this action.  For instance, Plaintiffs allege that Defendant Hubbard was the former director of CDCR's Division of Adult Operations and issued a memo in November 2007 that "continued to allow Plaintiffs and others who were members of high-risk groups to be housed in hyper-endemic prisons." (ECF No. 1 at ¶ 22.)

However, the complaint does not allege that Defendant Hubbard was involved in the adoption of the policy that failed to exclude those inmates at high risk of developing disseminated disease; nor does the complaint specify when she held this position; if she continued to hold the position as more information became available as to the extent of the risk to inmates in these high risk categories; or if Defendant Hubbard was director when any of these inmates were housed at the subject prisons.  Plaintiffs' allegation that Defendant Hubbard issued a memo which continued to allow inmates to be housed at the prisons is insufficient to show that Defendant Hubbard was liable for the policy that injured Plaintiffs in this action.

Similarly, the complaint fails to allege any information from which the Court can infer that Defendants Rothchild, Hysen, Meyer, or Hartley held the position stated in the complaint at the time that Plaintiffs were subject to the violations alleged in the complaint.  To the extent that Plaintiffs attempt to assert that the policies continue to violate the Constitution, Plaintiffs in this action are no longer at risk of contracting Valley Fever.  Even if the policy has been continued by a successor, Plaintiffs do not state a claim against current CDCR officials who were not involved in the policy prior to the plaintiff being injured.  Plaintiff may not state a claim against current

officials where their conduct did not cause or contribute to a completed constitutional violation that occurred in the past.  See George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (Only those who contribute to a constitutional violation are liable.  "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.")

Plaintiffs' complaint fails to state a claim against Defendants Hubbard, Rothchild, Hysen, Meyer, or Hartley; and the Court recommends that the motion to dismiss be granted as to these defendants.

4.    Defendants Schwarzenegger, Yates, and Cate

While Defendants argue that the complaint fails to allege that any defendant personally participated in any act or failure to act that harmed Plaintiffs, "[t]he law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right."  Starr, 652 F.3d at 1207 (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir.1991)).  The Court shall address below whether Plaintiffs have set forth sufficient allegations to link Defendants Schwarzenegger, Yates, and Cate to the violations alleged.

**B.    Eight Amendment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

1.    Conditions of Confinement

Plaintiffs allege that they have been subjected to cruel and unusual punishment by the policies and procedures allowing them to be housed in a hyper-endemic region and they subsequently contracted Valley Fever.  The Eighth Amendment's prohibition against cruel and

21

1    unusual punishment protects prisoners not only from inhumane methods of punishment but also

2    from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

3    2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S.

4    337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often

5    are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.

6    Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus,

7    conditions which are devoid of legitimate penological purpose or contrary to evolving standards

8    of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan,

9    465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737

10   (2002); Rhodes, 452 U.S. at 346.  In order to state a claim for violation of the Eighth Amendment,

11   the plaintiff must allege facts sufficient to support a claim that prison officials knew of and

12   disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S.

13   825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

14        The Court shall first address the substantial risk of harm prong of the deliberate

15   indifference analysis.

16        **a.       Substantial Risk of Harm**

17        Defendants argue that no court has held that exposure to Valley Fever, in and of itself,

18   presents a substantial risk to an inmate's health.  The Court agrees that merely being exposed to

19   an area, even a hyper-endemic area, by itself does not constitute an excessive risk of harm.  See

20   Sullivan v. Kramer, No. 1:13-cv-00275-DLB-PC, 2014 WL 1664983, at *5 (E.D. Cal. April 23,

21   2014) (being confined in an area where Valley Fever spores exist is insufficient to state a claim

22   for deliberate indifference); Lua v. Smith, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at

23   *2 (E.D. Cal. Mar. 31, 2014) (first prong of deliberate indifference claim satisfied where plaintiff

24   identifies a factor responsible for increasing the risk of contraction or severity of infection);

25   Willis v. Yates, No. 1:08-cv-00125-0WW-SMS PC, 2009 WL 3486674, at *3 (E.D. Cal. Oct. 23,

26   2009) (risk of contracting Valley Fever by being housed at PVSP and fact that inmate contracted

27   Valley Fever is insufficient to state a claim).  As Plaintiffs' allege in their complaint, most

28   individuals who contract Valley Fever get a mild form of the disease with moderate to mild flu-

like symptoms or no symptoms at all.  (ECF No. 2 at ¶ 5.)  Sixty percent of individuals experience no symptoms and most of the remaining forty percent only have mild flu-like symptoms.  (Id. at ¶ 44, 45.)  Therefore, to the extent that Plaintiffs attempt to state a claim based on mere placement at a prison in an area that results in Valley Fever, the complaint fails to state a claim.

However, the complaint contains sufficient facts to allege that African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as individuals with compromised immune systems, were at a substantial risk of developing disseminated infection which causes life threating pneumonia or blood-borne spread of the fungus to other parts of the body and can be fatal.[3]  The Court finds that the complaint is sufficient to allege that individuals within these categories were at a substantial risk of harm due to their increased risk of developing disseminated infection.

Having found that Plaintiffs have sufficiently alleged that African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as individuals with compromised immune systems were at a substantial risk of harm, Plaintiffs to this action must belong to one of these groups which place them at high risk of developing disseminated disease to state a claim. The Court addresses those plaintiffs that have not alleged facts to show they were at a substantial risk of harm.

### i. Plaintiff Beagle

Plaintiff Beagle is a Caucasian male who alleges that prior to being transferred to ASP he had "elevated liver enzymes suggesting a compromised liver, blood clots in his legs, lower back pain, grout, and chronic pain from skin grafts."  (ECF No. 2 at ¶¶ 201-203.)  Plaintiffs' complaint alleges that individuals with compromised immune systems are at a greater risk of developing severe disseminated disease.  (ECF No. 2 at ¶ 88.)  As alleged in the complaint, "[a] compromised immune system may be caused by any of several chronic diseases including

---

[3] Although Plaintiffs allege that inmates over the age of fifty five are also at an increased risk of developing disseminated disease (ECF No. 2 at ¶ 92), it was not until April 11, 2013, that there is any indication that CDCR staff had any knowledge of a risk to inmates over 55 years old, (ECF No. 2 at ¶ 189).

diabetes, HIV, lung disease, organ transplant, or taking TNF inhibitors for arthritis." (Id.) Plaintiff Beagle does not allege any facts which would include him within the category of individuals with a compromised immune system. As Plaintiff Beagle is not within the high risk categories placing him at a substantial risk of harm, he fails to state a claim and his claims should be dismissed.

### ii.  Plaintiff Burke

Plaintiff Burke is a Caucasian male and does not allege that prior to being housed at PVSP he had any medical condition that would place him in a high risk category. For that reason, Plaintiff Burke fails to state a cognizable claim and his claims should be dismissed.

### iii.  Plaintiff Hollis

Plaintiff Hollis alleges that he is a Caucasian male and does not allege any facts to show that he belongs to a high risk category. Further, Plaintiff Hollis alleges that he was healthy prior to being placed at PVSP. Plaintiff Hollis has failed to state a claim. Further, the Court finds that he is unable to allege any facts which would place him in a high risk category and for that reason; Plaintiff Hollis should be dismissed from this action without leave to amend.

### iv.  Plaintiff Koklich

Similarly, Plaintiff Koklich alleges that is a Caucasian male and was in good health prior to arriving at PVSP. Plaintiff Koklich has failed to allege facts to demonstrate that he belongs to a high risk category. Further, the Court finds that based on the allegations in the complaint, Plaintiff Koklich would be unable to allege any facts to correct the deficiencies in his claim in regards to the claims that are proceeding in this action.

To the extent that Plaintiff Koklich contends that construction around PVSP placed him at a higher risk of contracting Valley Fever, the Court finds that this claim is improperly joined in this action. Rule 20 of the Federal Rules of Civil Procedure provides that plaintiffs may be joined in an action "if:  they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A) and (B).

In this action, Plaintiff Koklich's claim to relief, that he was exposed to a substantial risk of harm by construction around PVSP is not common to the allegations of the other plaintiffs in this action.  Plaintiff Koklich's claim is not based upon the policy of housing high risk inmates in the hyper-endemic area and does not arise out of the same transaction, occurrence or series of transactions.  Plaintiff Koklich's claim is based upon discrete decisions by officials to build around PVSP and these facts do not rise in the claims brought by the other plaintiffs in this action.

For these reasons, the Court recommends that Plaintiff Koklich be dismissed from this action, without leave to amend.

**b.      Deliberate Indifference**

Plaintiffs have set forth numerous publications by the CDCR and related public entities which were provided to Defendants Schwarzenegger, Yates and Cate in this action placing them on notice that certain individuals were at a significant risk of contracting Valley Fever and having it develop into the disseminated form of the disease by virtue of their race, national origin, or because they had a compromised immune system.  This is sufficient to show that these defendants knew that African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as those who are immune-compromised or immune-suppressed were at a significantly increased risk of contracting the disseminated form of Valley Fever.

Armed with such knowledge, Plaintiffs contend that Defendants Schwarzenegger, Yates and Cate failed to adopt a policy of excluding these high risk inmates from being housed in the hyper-endemic area or moving high risk inmates out of the hyper-endemic area.  Defendants argue that the complaint fails to allege that the defendants personally caused the injury to Plaintiffs and cannot state a claim for deliberate indifference because the defendants were unaware of the details of the plaintiffs' incarceration, medical conditions or increased risk of Valley Fever.  However, "when a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur.  Claims against such supervisory officials, therefore, do not fail on the state of mind requirement, be it intent, knowledge, or deliberate indifference." OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012).

i.      Defendant Schwarzenegger

Specifically, Plaintiffs contend that Defendant Schwarzenegger was aware of the risk to these inmates housed at PVSP as early as 2005 when a prisoner rights group sent him an informational packet describing the threat posed to these high risk inmates by Valley Fever. (ECF No. 2 at ¶ 101.)   Yet, despite this knowledge, Plaintiffs allege that in 2007 Defendant Schwarzenegger proposed that new dormitories be constructed at PVSP increasing the number of prisoners that could be housed there by 600.  (Id. at ¶ 102.)   Plaintiffs state that Defendant Schwarzenegger indicated he was not concerned about the incidence of Valley Fever and that they would go ahead and build when questioned during a press conference.  (Id. at ¶ 103.) Plaintiffs also contend that in 2011, Defendant Schwarzenegger announced that housing prison inmates at PVSP would continue unabated.  (Id. at ¶ 83.)

While Plaintiffs' complaint demonstrates that Defendant Schwarzenegger was or should have been aware of the threat to high risk inmates, the allegations in the complaint fail to show that he had any personal involvement in the policies that allowed such high risk inmates to be housed at PVSP or ASP.   Plaintiffs' contend that Defendant Schwarzenegger "condoned subordinates' actions", however, there are no allegations in the complaint that Defendant Schwarzenegger was aware of the specific inmates that were being housed at these prisons or was responsible for promulgating the policies.

Defendant Schwarzenegger is not liable for the policies of the CDCR where he did not participate in or direct the violations, nor knew of the violations and failed to act to prevent them. Taylor, 880 F.2d at 1045.  To the extent that Plaintiffs attempt to state a claim based solely upon the decision to house inmates in the endemic area, the amended complaint fails to state a claim. As the Court previously discussed, building a prison in the hyper-endemic area does not create a substantial risk of harm.   Defendant Schwarzenegger's alleged comments during press conferences do not show that Defendant Schwarzenegger was aware that high risk inmates were were being housed at Corcoran, PVSP, or ASP and thereby exposed to a substantial risk of serious harm.  The fact that Defendant Schwarzenegger made comments showing that he was aware of the risk of Valley Fever alone is not sufficient to state a claim that Defendant

26

Schwarzenegger was deliberately indifferent to the risk to Plaintiffs in this action.

The allegations in the complaint do not show that Defendant Schwarzenegger was aware of any substantial risk of harm to inmates due to the decision to build next to PVSP, and as discussed above, such claims are not properly joined in this action.  Plaintiffs' complaint fails to state a claim against Defendant Schwarzenegger and the Court recommends that the motion to dismiss Defendant Schwarzenegger be granted.

ii.     Defendants Cate and Yates

Plaintiffs allege that in 2007 the Fresno Grand Jury investigation informed Defendants Cate, and Yates of the incidence of Valley Fever at PVSP and the increased risk to African-Americans, Hispanics, and Filipinos and other Asians.  (ECF No. 2 at ¶¶ 97-100.)  Plaintiffs contend that although Defendants were aware that housing these inmates in the hyper-endemic prisons posed a greatly elevated risk of them contracting the disseminated disease, Defendant Cate created and continued policies that allowed inmates to be transferred into the high risk area and did not protect high risk prisoner groups; and Defendant Yates established and implemented a policy that allowed them to be housed in the endemic area.

The allegations contained in the complaint are sufficient to state a claim against Defendants Cate and Yates for deliberate indifference to conditions of confinement by allowing these high risk categories of inmates to be housed at prisons in the endemic and hyper-endemic area.  The Court recommends that Defendants' motion to dismiss Defendants Cate and Yates be denied.[4]

iii.    Defendant Winslow

Plaintiffs contend that Defendant Winslow was the former Statewide Medical Director for CDCR and authored a memo in June 2007 disclosing that CDCR was aware of the greatly increased risk of infection in the hyper-endemic areas and that the risk was multiplied several times over for certain ethnic groups.  (ECF No. 2 at ¶ 27.)  Defendant Winslow made

---

[4] While Defendants argue that they have taken, and continue to take in good faith, efforts to protect inmates based upon the evolving recommendations regarding Valley Fever, at the motion to dismiss stage the allegations in the complaint are taken as true.

1    recommendations that were ignored in his policy recommendations issued five months later.  (Id.)

2    While Plaintiffs allege that Defendant Winslow personally participated in CDCR's

3    adoption of policies that allowed high risk inmates to continue to be transferred to these prisons,

4    there are no facts alleged in the amended complaint to support such a conclusory allegation.

5    Plaintiffs have not alleged any facts to show that Defendant Winslow was personally involved in

6    adopting or implementing the policies which are being challenged in this action.

7    Further, Plaintiffs contend that Dr. Winslow issued a memorandum in November 2007

8    that did not include recommend excluding all African-American, Hispanic, Filipino and other

9    Asian inmates.  However, in June 2007 Defendant Winslow issued a memorandum making

10   recommendations to reduce the infection rate inside the prison.  Deliberate indifference occurs

11   where the official fails to address a substantial risk of harm to the inmates.  Simmons v. Navajo

12   County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010).  In this instance, based on the allegations

13   in Plaintiffs' complaint, Defendant Winslow was not deliberately indifferent to the risk, but made

14   recommendations to reduce the incidence of infection rates at the prison.  The Court recommends

15   that Defendants' motion to dismiss Defendant Winslow be granted.

16           iv.      Defendant Igbinosa

17   Plaintiffs allege that Defendant Igbinosa was the medical director at PVSP during the time

18   period relevant to this complaint.  (Id. at ¶ 32.)  Plaintiffs contend that despite being aware of the

19   incident rate of the disease, he failed to establish a prison level policy of screening inmates to

20   enable them to be transferred away from the hyper-endemic prison.  (Id.)

21   While Plaintiffs contend that Defendant Igbinosa failed to establish a screening policy to

22   identify high risk inmates, given the CDCR policy that existed at the time, instituting a policy to

23   screen inmates would not have resulted in Plaintiffs being transferred from PVSP.  Plaintiffs'

24   complaint fails to allege any facts from which the Court may infer that Defendant Igbinosa was

25   responsible for the policy of housing high risk inmates at PVSP or had any authority, by virtue of

26   his position as medical director at the prison, to have inmates transferred to another prison due to

27   being at high risk of contracting disseminated disease.

28   Further, Plaintiffs' conclusory statement that Defendant Igbinosa was aware of the

28

1  incidence rate of Valley Fever and medical risks and failed to take actions to address the epidemic

2  or reduce inmates expose to disease fails to show state a plausible claim that Defendant Igbinosa

3  failed to respond to a serious medical need. Plaintiffs' complaint specifically alleges that

4  Plaintiffs should not have been transferred to PVSP or should have been transferred from PVSP.

5  As discussed, the complaint fails to show that Defendant Igbinosa was responsible for transfer

6  decisions or the CDCR policy. Plaintiffs fail to include any allegations that Defendant Igbinosa

7  had the ability to protect Plaintiffs from expose to Valley Fever and failed to do so.

8      Plaintiffs fail to state a cognizable claim and the Court recommends that Defendants'

9  motion to dismiss Defendant Igbinosa be granted.

10      2.      Deliberate Indifference to Serious Medical Needs

11      Plaintiffs also contend that Defendants were deliberately indifferent to their serious

12  medical needs by transferring them to an area where they were exposed to Valley Fever. In the

13  context of deliberate indifference to medical needs, deliberate indifference is shown where the

14  official is aware of a serious medical need and fails to adequately respond. Simmons, 609 F.3d at

15  1018. Plaintiffs allegation that exposure to Valley Fever was deliberate indifference to a medical

16  condition fails to state a claim.

17      Deliberate indifference may be manifested "when prison officials deny, delay or

18  intentionally interfere with medical treatment," or in the manner "in which prison physicians

19  provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

20  other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

21  Plaintiffs allege that due to their risk factors, by exposing them to Valley Fever a serious medical

22  condition could and did occur. At the time the inmates were transferred to the subject prison no

23  serious medical condition existed that required response.

24      In the opposition to the motion, Plaintiffs argue that they did not receive appropriate care

25  for their Valley Fever, however these allegations are not set forth in the complaint. While some

26  plaintiffs do allege a period of time passed between their symptoms beginning and being formally

27  diagnosed and treated, Plaintiffs have not linked this delay to any defendant named in this action.

28  Nor have Plaintiffs linked any named defendant to any complications that they suffered due to

any alleged treatment received while incarcerated.  As alleged in the complaint, Plaintiffs' claim is deliberate indifference to conditions of confinement.  Plaintiffs fail to state a deliberate indifference to serious medical needs claim and the motion to dismiss this claim should be granted.

### C.   Ripeness

Defendants contend that since Plaintiffs Belardes, Carter, Clark, Felder, Garza, Hollis, Infinity, Koklich, Montgomery, Romero, Thomas, Tillis, Villanueva, Westbrook and Woods are still in custody their claims for the cost of on-going medical care are not ripe.  Plaintiffs counter that their claims are ripe as they have contracted Valley Fever and therefore have demonstrated present injury and pleading general damages, including future medical costs, is legally proper at this phase of the litigation.

For each form of relief sought in federal court, Plaintiff must establish standing.  Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010).  This requires the plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted). "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing.  Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.' "  Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal citations omitted).

Defendants rely on Hassel v. Sisto, No. 2:10-cv-0191-GEB-CMK, 2011 WL 2946370 (E.D. Cal. July 21, 2011), to argue that certain plaintiffs in this action cannot pursue claims for future medical care because they are still in the custody of CDCR.  In Hassel the inmates alleged they had contracted tuberculosis ("TB") as a result of prison officials deliberate indifference and were seeking future medical damages.  Id. at *1.  However, none of the plaintiffs had active TB.  Id.  The defendants filed a motion to dismiss arguing that there was no case or controversy ripe

1   for adjudication as none of plaintiffs had active TB and any future damage was too speculative.

2   Id. at *2-3.  The court found that any future damage was too speculative to bring to court.  The

3   reasons given by the court were that the costs of future healthcare would not be compensable until

4   after the plaintiffs were released from prison; they would have to develop TB and show that it

5   was attributable to a relapse of their treatment in prison; and there was no imminent danger of

6   them developing active TB since they had been effectively treated in prison.  Id. at *3.

7          While Hassel could be relevant on a motion for summary judgment as to those Plaintiffs

8   who do not allege they are currently suffering symptoms of Valley Fever or have not been

9   diagnosed with Valley Fever, the complaint alleges a cause of action due to the risk of contracting

10  disseminated disease.  While not all Plaintiffs have alleged they have disseminated disease and

11  some are suffering no symptoms, at this stage of the litigation, the Court cannot find that

12  Plaintiffs' risk of their Valley Fever progressing to disseminated disease is too speculative to

13  allow to proceed.  Therefore, at the pleading stage, Plaintiffs have alleged an actual injury that

14  can be addressed by a favorable judicial decision.  While Defendants contend that the date that

15  Plaintiffs will be released from custody is speculative, there are no facts before the court to

16  determine that such a date could not be determined should this action proceed to trial.

17  Defendants' motion to dismiss the claims for future medical damages on the grounds of ripeness

18  should be denied.

19          **D.      State Tort Claim**

20          In the complaint, Plaintiffs contend that Defendants waived all defenses based on

21  presentation of claims to the Victims Compensation Board due to failing to comply with the

22  statutory notice requirements under California Government Code section 53501.  Defendants

23  move to dismiss the state law claims on the ground that Plaintiffs did not comply with the

24  Government Claims Act and Plaintiffs are not excused from presenting their claim prior to

25  bringing suit.

26          The California Tort Claims Act[5] requires that a tort claim against a public entity or its

27  _____

28  [5] The Court recognizes that in City of Stockton v. Superior Court, 42 Cal.4th 730, 742 (Cal. 2007), California's Supreme Court
    adopted the practice of referring to California's Tort Claims Act as the Government Claims Act. However, given that the federal

employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6; Bodde, 90 P.3d at 123.  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action." Bodde, 90 P.3d at 120.

Plaintiffs contend that Defendants waived the presentation requirement by not complying with California Government Code section 53501 which requires that each public agency must file with the Secretary of State a form which includes:

> 1. The full, legal name of the public agency.
> 2. The official mailing address of the governing body of the public agency.
> 3. The name and residence or business address of each member of the governing body of the public agency.
> 4. The name, title, and residence or business address of the chairman, president, or other presiding officer, and clerk or secretary of the governing body of such public agency.

Cal. Gov. Code § 53051(a).  Section 946.4, as relevant here, provides that the failure to present a claim does not bar a suit if "[a] statement or amended statement pertaining to the public agency is on file, or is placed on file . . . but the information contained therein is so inaccurate or incomplete that it does not substantially conform to the requirements of Section 53051."  A public agency is described as "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city."  Cal. Gov. Code § 53050.

"[S]ection 53051 was enacted 'to provide a means for identifying public agencies and the names and addresses of designated officers needed to enable or assist a person to comply with

---

government has also enacted a Tort Claims Act, 28 U.S.C. § 2671, the Court here refers to the Government Claims Act as the California Tort Claims Act in an effort to avoid confusion.

1  any applicable claims procedure[.]' " <u>Wilson v. San Francisco Redevelopment Agency</u>, 19

2  Cal.3d 555, 561 (1977).  An "agency's failure to comply with section 53051 entitles the claimant

3  to ignore the claim-filing requirement entirely." <u>Id.</u>

4      In their opposition, Plaintiffs contend that, at the pleading stage, the Court should not

5  decide the issue of substantial compliance.  However, the Court disagrees for several reasons.

6  Initially, Plaintiffs argue that the failure to comply with the California Tort Claims Act is an

7  affirmative defense.  However, to state a claim a plaintiff must allege compliance with the Act

8  and it is therefore an element of the state law cause of action.  <u>Young v. City of Visalia</u>, 687

9  F.Supp.2d 1141, 1152 (E.D. Cal. 2009).  Therefore, failure to comply with the California Tort

10  Claim Act is fatal to Plaintiffs' cause of action.  <u>Hacienda La Puente Unified School Dist. of Los</u>

11  <u>Angeles v. Honig</u>, 976 F.2d 487, 495 (9th Cir. 1992).  Also, the issue of whether Defendants

12  substantially conform with the requirements of the statute is not a factual issue, but is a legal

13  issue.  Finally, as the Ninth Circuit recently reiterated, issues dealing with exhaustion

14  requirements, if feasible, should be decided before reaching the merits of a prisoner's claim.

15  <u>Albino v. Baca</u>, 767 F.3d 1162, 1169 (E.D. Cal. 2014).

16      The California Tort Claim Act defines the State as "the State and any office, officer,

17  department, division, bureau, board, commission or agency of the State claims against which are

18  paid by warrants drawn by the Controller."  Cal. Gov. Code §§ 900.6, 940.6.  If the CDCR claims

19  are paid by warrants drawn by the Controller, it would be considered the State for the purposes of

20  the Tort Claims Act and is not required to comply with section 53050.  <u>See</u> <u>Galli v. State of</u>

21  <u>California</u>, 98 Cal.App.3d 662, 675 (1979).

22      Further, the Court takes judicial notice of the California Roster of State Agencies,

23  Departments, Boards, and Commissions provided by Defendants in their request for judicial

24  notice.[6]  (ECF No. 38-1 at 2.)  The information provided in the Roster for the CDCR includes the

25

26  [6] As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.  <u>United States v. Corinthian Colleges</u>, 655 F.3d 984, 998 (9th Cir. 2011).  However, the incorporation by reference

27  doctrine allows material attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if : (1) the complaint refers to the document; (2) the document is central to plaintiff's

28  claim; and (3) no party questions the authenticity of the document."  <u>Corinthian Colleges</u>, 655 F3d at 999.

1    address, phone number and website address for the CDCR.  (Id.)  The website address provided is

2    for the CDCR website which provides the identity of the Secretary of the CDCR and information

3    on each of the divisions and boards within the CDCR.[7]

4         An unpublished California case, Kahaunaele v. Tri-City Medical Center, No. D053214,

5    2009 WL 2004428, at *6 (July 10, 2009), recognizes the sparseness of the law addressing what

6    defines substantial conformity with the requirements of section 53051.  Kahaunaele applied the

7    law of substantial compliance to determine the issue.  Id. at *7.

8         "Substantial compliance . . . means actual compliance in respect to the substance essential

9    to every reasonable objective of the statute."  Costa v. Superior Court, 34 Cal.4th 986, 1017 n.24

10   (2006) (citations omitted).  This means that each objective of the statute must be achieved in

11   order to satisfy the substantial compliance standard, but it does not require actual compliance with

12   every specific statutory requirement.  Id.  In determining whether there has been substantial

13   compliance, "t[]he paramount consideration is the objective of the statute."  North Pacifica LLC

14   v. California Costal Com'n, 166 Cal.App.4th 1416, 1431 (2008).

15        The purpose of section 53051 is "to provide a means for identifying public agencies and

16   the names and addresses of designated officers needed to enable or assist a person to comply with

17   any applicable claims procedure."  Tubbs v. Southern California Rapid Transit Dist., 67 Cal.2d

18   671, 676 (1967).  The information provided on the Roster is sufficient to enable or assist an

19   individual to comply with any applicable claims procedure.  While Plaintiffs argue that the

20   information is incomplete as found in Banfield v. Sierra View Hospital, 124 Cal.App.3d 444

21   (1981), in Banfield the information on the roster was incorrect and therefore not substantially

22

23   ────────────

     [7] Plaintiffs object to the request that the Court take judicial notice of the CDCR website citing Knievel v. ESPN, 393

24   F.3d 1068, 1076 (9th Cir. 2005).  While Plaintiffs cite to footnote 13, there is no footnote 13 in the opinion.
     However, at the page cited the court did take into account the web pages attached to the motion to dismiss under the

25   "incorporation by reference" doctrine.  Id.  Further, courts may take judicial notice of "a fact that is not subject to
     reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot

26   reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on
     government websites where neither party disputes the accuracy of the information contained therein.  Daniels –Hall

27   v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  The Court overrules Plaintiffs' objections to the
     Court taking judicial notice of the CDCR website.

28

compliant because the hospitals had failed to file updated information with the Roster of Public Agencies.  Id. at 456.  Here, there is no argument that the information provided on the Roster was incorrect.

Plaintiffs' contend that the failure to name the secretary and each member of the governing board did not substantially comply with section 53051.  However, the information provided on the roster includes the website for the CDCR which provides the current information regarding the contact information for each department or division of the CDCR.  Plaintiffs are excused from presenting a claim only where the information provided by the agency "is so inaccurate or incomplete that it does not substantially conform to the requirements of Section 53051."  Cal. Gov. Code § 946.4.  The Court finds that the information on the Roster substantially complies with the purpose of section 53051 as it provides a means to identify the officers so that Plaintiffs could comply with the claims procedure.  See Media Services, Inc. v. Mehas, 50 Fed.Appx. 850, 1 (9th Cir. 2002) (unpublished) (finding alleged error of failure to list secretary or clerk insubstantial in complying with section 53051).

Defendants' motion to dismiss Plaintiffs state law claims for failure to file a claim in compliance with the California Tort Claim Act should be granted as to all Plaintiffs based the allegation that they are excused from complying with the California Tort Claims Act.

    1.   <u>Plaintiff Boyd</u>

Plaintiff Boyd is the **only** plaintiff who alleges that he presented a claim to the Victim Compensation Board.  Defendants request that the Court take judicial notice of the claim form and that this action was filed prior to the Board rejecting his claim.[8]

The California Tort Claims Act provides that action on or rejection of the claim are conditions precedent to suit.  Bodde, 90 P.3d at 119; Shirk, 42 Cal.4th at 209.  Plaintiff Boyd submitted a claim form on October 21, 2013 which was rejected because it failed to comply with the requirements of California Government Code section 905.2(c).  (Government Claim Form, ECF No. 26-2 at Exhibit K.)  Plaintiff Boyd submitted a claim on November 20, 2013, and

---

[8] The Court will take judicial notice of the claim forms referred to in the complaint based on the incorporation by reference doctrine.

1    January 24, 2014.  (Id. at 15-20.)  Plaintiff Boyd's claim was rejected at the March 20, 2014

2    meeting of the Victim Compensation Board.  (ECF No. 26-2 at 13.)  This action was filed on

3    February 5, 2014, approximately two months prior to the Board acting on his claim, therefore,

4    Plaintiff Boyd did not comply with the requirements of the California Tort Claim Act and he fails

5    to state a state law claim in this action.  The Court recommends that Plaintiff Boyd's state law

6    claims be dismissed for failure to state a claim.  Wickland Oil Terminals v. Asarco, Inc., 654

7    F.Supp. 955, 961 (N.D. Cal. 1987).

8         **E.       Misjoinder of Parties**

9         Defendants move to sever the claims against the individual defendants contending that the

10   parties are misjoined in this action.  Plaintiffs counter that they are alleging that Defendants'

11   policies and systemic pattern of inaction exposed them to a greater risk of contracting Valley

12   Fever and they share common questions of law and fact making joinder of the parties and claims

13   proper.

14        Rule 20 of the Federal Rules of Civil Procedure provides for joinder of parties in a single

15   action where any right to relief is asserted by them or against them "jointly, severally, or in the

16   alternative with respect to or arising out of the same transaction, occurrence, or series of

17   transactions or occurrences; and any question of law or fact common to all plaintiffs [or

18   defendants] will arise in the action. Fed. R. Civ. P. 20(a)

19        The complaint in this action arises out of the policy of housing high risk inmates in the

20   endemic area which was allegedly promulgated and implemented by the defendants in this action.

21   While the defendants argue that the injuries do not arise out of the same transaction or

22   occurrence, other than Plaintiff Koklich as discussed above, the Court disagrees.  Plaintiffs are all

23   alleging to have been harmed by the same policy.  Similarly the claims by all these Plaintiffs will

24   share common questions of law and fact.  Joinder is appropriate under Rule 20.  While the Court

25   agrees with Defendants that the issue of joinder for all purposes may need to be readdressed at a

26   later stage of the proceedings, Defendants' motion to dismiss for improper joinder should be

27   granted for Plaintiff Koklich and denied as to all other parties to this action.

28

F.      **Rule 8**

Finally, Defendants move to dismiss the complaint claiming it violates Rule 8 of the Federal Rule of Civil Procedure.  Plaintiffs oppose the motion on the ground that the complaint is appropriately detailed and is organized to allow Defendants to understand the Constitutional violations alleged.

While Defendants cite cases in which a complaint has been dismissed for being "prolix" with evidentiary detail, the Court does not find Plaintiffs' complaint to violate Rule 8.  The Ninth Circuit has held that a complaint may be dismissed where the allegations are such that the court has difficulty determining the circumstances that gave rise to the cause of action.  Gottschalk v. City and County of San Francisco, 964 F.Supp.2d 1147, 1154 (N.D. Cal. 2013)  "Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.' "  Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed.2010)).

While the complaint is seventy-nine pages long, it asserts claims for twenty-two plaintiffs against thirteen defendants.  Although the complaint does contain some unnecessary and repetitive detail, it is not so repetitious or confusing as to make it incomprehensible.  The complaint is logically organized, divided into sections for parties, factual allegations, Plaintiffs theories of liability, and causes of action.  The complaint here clearly delineates the claims being brought and the defendants against whom the claims are being made.  The complaint is this action is distinguishable from those cases in which courts have dismissed the complaint for violating Rule 8.  See Cafasso, 637 F.3d at 1059 (affirming denial of motion to amend where complaint contained 733 pages); Gottschalk, 964 F.Supp.2d at 1155 (dismissing complaint that was rambling, confusing, and unintelligible).

Further, while Defendants contend that Plaintiffs use terms such as high-risk or at-risk without defining the terms, the complaint makes it clear that certain racial groups, such as African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as those who are immune compromised are those at high risk for developing disseminated disease.

1    Although Defendants contend that Plaintiffs fail to identity if they fall within these categories,

2    each Plaintiff alleges which group he belongs to.  Plaintiffs Boyd, Carter, Clark, Felder, Johnson,

3    Montgomery, Romero, Thomas, Tillis, Westbrook and Woods identify themselves as African-

4    American.   Plaintiffs Bustamonte, Garza, Romero, and Villanueva identify themselves as

5    Hispanic.  Plaintiff Belardes identifies himself as American Indian and Plaintiff Plain5tiff Imuta

6    identifies himself as Japanese, which would be other Asian.  Additionally, Plaintiffs Clark and

7    Dibble allege they suffered from respiratory problems that placed them at high risk of contracting

8    Valley Fever prior to being transferred into PVSP.

9        Defendants also argue that Plaintiffs have failed to define certain terms such as hyper-

10   endemic regions or prisons.  However, the complaint identifies the prisons in the endemic and

11   hyper-endemic regions as ASP, California Correctional Institution, California State Prison-

12   Corcoran, Wasco State Prison, North Kern State Prison, PVSP, California Substance Abuse

13   Treatment Facility and State Prison at Corcoran, and Kern Valley State Prison.  (ECF No. 2 at ¶

14   54.)

15       The Court recommends that Defendants' motion to dismiss the complaint for violating

16   Rule 8 be denied.

17                                           **V.**

18                        **CONCLUSION AND RECOMMENDATION**

19       Based on the foregoing, IT IS HEREBY RECOMMENDED that:

20       1.      Defendants Winslow and Igbinosa's motion to dismiss be GRANTED;

21       2.      Defendants Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Rothchild,

22               Schwarzenegger, Meyer, and Yates motion to dismiss be DENIED IN PART AND

23               GRANTED IN PART as follows:

24       a.      The motion to dismiss Defendants Brown, Schwarzenegger, Beard, Brazelton,

25               Hubbard, Rothchild, Hysen, Meyer, and Hartley be GRANTED;

26       b.      The motion to dismiss Defendants Cate and Yates be DENIED;

27       c.      Defendants' motion to dismiss the claim of deliberate indifference to conditions of

28               confinement in violation of the Eighth Amendment be DENIED;

d.       Defendants' motion to dismiss the claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment be GRANTED;

e.       Defendants' motion to dismiss the state law claims for failure to allege compliance with the Tort Claim Act be GRANTED;

f.       Defendants' motion to dismiss Plaintiffs' complaint on all other grounds be DENIED;

g.       Plaintiffs Beagle and Burke's claims be dismissed with leave to amend for failure to state a claim; and

h.       Plaintiffs Hollis and Koklich be dismissed, without leave to amend, for failure to state a claim; and

3.       Plaintiffs should be granted an opportunity to file an amended complaint to cure the deficiencies identified in this findings and recommendations.[9]

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

//

//

//

_____

[9] Plaintiffs are not being granted an opportunity to file an amended complaint at this time.  Once the district judge issues an order on the findings and recommendations, Plaintiffs shall be provided with the date by which to file an amended complaint.

time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **June 24, 2014**                                  

UNITED STATES MAGISTRATE JUDGE